The next case this morning is 5-21-0-2-6-0 People v. Cuttrell. Arguing for the defendant appellant is Levi Harris. Arguing for the appellee state is Sharon Shanahan. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Mr. Harris, are you ready to proceed? I am. You may do so. Your Honor, I am Assistant Defender Levi Harris and I am here on behalf of my client, the appellant Stephen Cuttrell. May it please the court, counsel, we are here today seeking retrial for Mr. Cuttrell because improper other crimes evidence denied him his right to a fair trial the first time. This error is fully preserved, so the state bears the burden of showing it to once the error itself is shown to have occurred. We know that although evidence of prior bad acts is generally prohibited in cases to show propensity, there are certain statutory exceptions, one of which applies in sex cases like this where the allegations are aggravated criminal sexual abuse. However, even when courts are allowed to bring in this evidence or the state is allowed to bring in the evidence, courts still have to perform a balancing test to make sure that it is more probative than prejudicial. That includes considering the factual similarity of the charged acts to the previous conduct, the proximity and time of the prior conduct to the allegations involved at trial, and any other relevant facts and circumstances. Here, the bad acts that were alleged by one witness, FV we are going to call her, had almost no similarity at all to the charged acts in this case. Did someone say something? Okay. Sorry. And allegations by another crimes witness, CS, were so proximate in time and dissimilar from the acts in this case that they also were more prejudicial than probative. So that admitting their testimony over defense objection was an abuse of the trial court's case or what was alleged to have happened. Here, the allegations by the state were that Mr. Cutrell touched his daughter's bare genitals and had her touch his bare genitals at least once a month each between certain months in 1995 to 1998. These things allegedly would happen at night when no one was around. The mother would be at work. The brother would be asleep. They would happen in the living room on the couch. It would involve direct skin-to-skin contact, and it was quiet, and my client would tell the complaining witness to keep this quiet and not to tell anybody. So now consider the allegations by the first other bad acts witness, FV. What she testified to was an event at Mr. Cutrell's home. I should say also the events involving HC, Mr. Cutrell's when she was 7 to 10 years old. The events that FV described happened when she was 13 years old. She was staying over at the house. I believe she was actually Mr. Cutrell's second cousin or something but was the age of the daughter and so was staying over for a sleepover. Mr. Cutrell's wife was home, unfortunately dying of cancer. His son was home. They were all awake, and at this slumber party, Mr. Cutrell got drunk and was involved in a fight with his wife, yelling and screaming at her. FV told him to stop. He told her to leave and then told her that she was not allowed to leave and pulled her close to him, kissed her, rubbed his crotch against her crotch through their clothes. So FV's allegations happened with witnesses around. It was loud. It was raucous. It happened through clothing, not direct conduct. It happened when she was a teenager, not when she was a little kid. Basically, bore no similarity at all other than that it was a sexual act against somebody who was too young for this to happen. Now, admittedly, when we talk about it in the briefs, the factual similarity for this kind of propensity evidence under the statute doesn't have to be as high as that which would be required for a modus operandi. But here, these allegations by FV were so dissimilar that all they did was paint Mr. Cutrell as a pervert who did this thing to this teenage girl and probably did the things to his daughter as well. So it was inappropriate, abusive discretion to allow this evidence in. Next, consider the allegations by CS, the other witness. This is the one who ended up, believe it or not, marrying into Mr. Cutrell's family by marrying his brother. But at the time of the allegations, she was, I believe, 8 to 12 years old. And Mr. Cutrell himself was a child, 14 to 18 years old. And I guess he wasn't a child at 18, but 14 to 17 he was. And he was friends with CS's brother. And so, CS's allegations involved 1981 to 1985, which were as short as 10 years, as long as 17 years before the allegations involved a trial. And also took place when Mr. Cutrell, as I said, was a very young person, child or a young man. Besides the proximity in time, 10 to 17 years, the conduct was dissimilar. So what CS alleged happened was four different occasions. First of all, she woke up one day and found Mr. Cutrell exposing himself by her bed. Your honors, I apologize for that. If you can hear the dog, the mailman must be here. But exposing himself by her bed, on another occasion that she woke up and he was masturbating by her bed. And then on two other occasions, one of which was at a slumber party, he put his hand down her pants. And on the other occasion that he sneaked into her bedroom while she was alone and put his hand down her pants. Again, this admittedly bears more similarity to the charge than what the FV allegations did. But it's still dissimilar enough from what happened in our case that it shouldn't have been admitted. So those were the errors. FV is evidence, CS is evidence. The state, if the court believes that these were errors, that this was an abuse of discretion to bring these in, the state is the one who bears the burden to demonstrate that they are harmless. There are three tests for harmlessness, one of which is did the errors contribute to the verdict? The second one is was there overwhelming evidence of guilt such as the errors just absolutely didn't matter. And the third one is whether it's cumulative of properly admitted evidence. Under all of those tests, the cumulative issue, you're not complaining of the evidence of propensity from JM. Is that correct? Correct. So there's no basis from our perspective to have excluded that. Certainly it was the trial court's discretion, but we're not arguing it was an abuse of discretion to allow her to testify about the separate incident. And even the incident that she described, she was present for these FV allegations. But what she described was a much more situation than, you know, FV, I don't want to say it's benign, it's still involved in appropriate conduct. But it wasn't nearly as violent, as loud, as raucous, as forceful as FV's testimony about the same incident. So we argue that that is not cumulative of any properly admitted evidence. I see I'm running out of time, your honors. If you have any other questions, I'm happy to answer. Otherwise, I will rebut after Ms. Shanahan. Justice Moore? No other questions. Justice Vaughn? No questions. Thank you. All right. Thank you, Mr. Harris. Ms. Shanahan? Yes, your honor. May it please the court, counsel. My name is Sharon Shanahan and I represent the people of the state of Illinois. In this case, the trial court allowed the testimony of three of defendant's prior victims under section 115-7.3. They were JM, who was his niece, FV, who was his cousin, and CC, who at the time of the assault was defendant's best friend's sister. The trial court did not allow one other victim to testify, finding her testimony to be more prejudicial than probative. As Justice Moore noted, the defendant does not have any, excuse me, complaints about JM's testimony. The only question here is whether the trial court abused its discretion in allowing the testimony of FV and CC. There could not be a clearer case where a trial court understood its discretion and utilized it wisely and properly. First of all, let's look at the proximity in time. Defendant only disputes CC and says that the acts of CC were, and I quote, long in the past, but there were only eight years from the time the time parameters of that evidence, and what does Donahoe say are the time parameters? The second part of your question, Donahoe says, Donahoe and its progeny have found periods of time from 15 to 20 years not too long. I didn't understand the first part of your question. When did this happen? Is that what you're asking? Yes. The evidence that was offered. It was off the top of my head. It was like 1988 for CC and 1995 for the victim in this case. That time range, I don't have the exact numbers in front of me. Does that answer your question? Yes. Okay. So as I said, it was only eight years from the time he stopped abusing her and started abusing the victim in this case. I think it's important to note that we are discretion standard. We have a trial court that clearly understands that and use that discretion to not allow one of the victims and to allow the other three after the 115-7.3 hearing. Donahoe says, I mean, Donahoe says 15, 20 years is not too long and this is only eight. So I don't think there's any question that CC's, the timeframe for CC is permissible under Donahoe. Moving on to similarities, Donahoe says, mere general areas of similarity will suffice to support testimony. Now the defendant doesn't dispute that all the victims were roughly the same age at the time that they were assaulted. I do have one, I think minor misstatement by counsel for the defendant. He said that the abuse of the victim stopped when she was 10. That's incorrect. It was when she was 12 and FV and JM were also 12 or 13 when it happened to them and CC was from five to about 10 when it happened to her. So those are all in the same general age in other words, defendant favors prepubescent girls. They were all family or friends and basically defendant was an opportunistic predator. They were in this house, they were available basically. One of the things that the defendant doesn't mention at all as a similarity is that the defendant only did this when he was drunk. Apparently he was a pretty nice guy when he was sober, but he was, all of the victims testified that he was drunk when he did this to them. The method of assault, he didn't penetrate, he rubbed and touched the girl's vaginal areas and tried to make them and sometimes did rub his penis. Sometimes under clothing, sometimes over clothing, but nonetheless, this is a fondling method. In defendant's reply brief, he admits that the similarities pointed out in the state's brief do exist regarding CC. So that, I think all of those things showed the similarities for these children. In his reply brief, defendant says the state fudged some of the similarities. He says one of the things that was supposedly fudged was that the victim FV and JM were good friends. And yet the record supports the victim's testimony at R447 that the question, did FV and JM ever visit the family home when you were still living there with your mother and your father and your brother? And her answer was frequently. JM testified that she was a close friend of the victim and visited regularly. And FV testified that she was friends with the victim and visited there three times that she could recall. The next fudge is that the occurrences were at night when the house was dark and other people in the house were asleep or gone. Defendant addresses only the incident when JM yelled at the defendant to stop. JM did testify about this incident too. In the reply brief, he says she did not, but JM testified about two incidents. But the other was the August 2003 incident. And although initially there were other people around, JM was in, excuse me, Janet, the victim's mother was dying of cancer and she was in her room. The victim's brother Dakota was not there. And the defendant sent the victim to her bedroom. So only FV and JM were there. And that's in the record at page 508. And it was at night. The record at 550 said it was 930 at night. The other two fudges I'll sort of address together is that the assaults were not violent or noisy and left no physical or visual evidence. And then the fourth one was what was described as defendant had quiet, sneaky intrusion. Defendant focuses on these words, noisy and quiet. Certainly all of the other assaults that are discussed in here were not violent, not noisy, and none of them left any physical or visual evidence. None of them were violent. The defendant says that this August 2003 incident was loud and raucous. Basically what we have is a bedridden dying woman saying, leave the girls alone. She couldn't do anything and defendant knew she couldn't do anything. And then we have FV telling the defendant to stop. Since nobody was around and all we have is two innocent girls trying to stop an assault by an adult man, they were still sneaky. Even if there was a little bit of noise, there was nobody to help them and defendant knew that and they were quiet. Put his hands on them, pushed up his erect penis against FV's vaginal area and it looks like I'm out of time. I have a little bit, a very little bit to say about the harmless error. You may go ahead. Thank you, Your Honor. The defendant says that the claim, as far as the, whether they were erroneously admitted, what was merely cumulative of other proper evidence, that's the third kind of examination. The defendant says that the incident, that the state's argument was patently false. But what the defendant describes in his reply brief was JM's Thanksgiving visit. When you look at JM's August 2003 visit, it was just JM, FM, and the defendant and their testimony about what happened that day matches up entirely to the point of FV being pushed onto the arm of the couch. Obviously, JM couldn't see quite as well to actually know whether defendant's penis was pushed against JM, but it was the same incident. There is no doubt when you look at roughly record 506 through 509 for JM and then 540 through 550 for FV, it's very clear it's the same incident. Thank you. Okay, Mr. Harris, rebuttal? Let me just ask, Justice Moore, any questions? No. Justice Vaughn? No questions, thank you. All right. Mr. Harris, rebuttal? Yes, Your Honor. First of all, I will say that I think Ms. Shanahan and I are in agreement that there were two different instances that JM was talking about. To the extent that we said in our reply brief that it was false that these were the same incident, perhaps we were misunderstanding the state and saying that this was the same incident. JM testified about two instances, one of which did not involve FV. The other one did involve FV. I think we have eventually reached the point where we understand that we are both in agreement that those were two different instances. FV's testimony about the incident that involved her was much more prejudicial than JM's testimony about the similar incident. Your Honors, I am mindful of Donald Rumsfeld's quote that you go to war with the army that you concede, as we would have to under Donahoe, that if proximity and time were the only basis for keeping out CS's testimony, then yes, the eight to however many years, I think 10 to 17 is what we would say the span was, would still be permissible under Donahoe if that were the only thing. But it is not the only thing. We also talk about the similarity between the acts. It is also relevant to proximity and time, or if it is not relevant to proximity and time, perhaps this would fall under other facts and circumstances. Mr. Keturah was basically a child at the time that most of these allegations involving CS took place. Counsel said that all of these happened when Mr. Keturah was drunk. CS testified that other than the last incident where he had been visiting her family once they moved to Indiana and drinking with her neighbors, she did not know whether he was drunk or not. There was testimony from HC that the abuse from her father stopped when she was 12. However, what we said, and I don't think that it is, that is what the state is focused on, but what we are focused on is what the charge conduct was, which I think is what the statute asked us to look at. The charge conduct only applied to time periods until HC was 10 years old. As far as whether the allegation made by FV was sneaky conduct or not, counsel says that Mr. Keturah's wife was bedridden with cancer and nobody could help her. That is true. However, HC was home and HC's brother, who was older than her, I think probably 15 at the time, was also home. The relevant question, from my perspective, is not whether somebody could stop this conduct. It is whether there were witnesses to this conduct and whether Mr. Keturah was going to get in trouble for it. There were certainly witnesses to this conduct. The other times that sneaky behavior was alleged, there was not anybody else around to see and for Mr. Keturah to get in trouble. That is the distinction we are pointing out. We are not saying that somebody could have stopped this. We are saying that there were witnesses and that makes it distinct from the other allegations that were involved. I do not think I have anything else to say unless your honors have questions. Justice Moore? No questions. Justice Vaughn? No questions. Thank you. All right. Thank you Mr. Harris and Ms. Shanahan for your arguments today. This matter will be taken under advisement. We will issue an order in due course.